24-2792
*Marcus & Cinelli, LLP v. Aspen Am. Ins. Co.*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2024

(Submitted: March 19, 2025     Decided: October 23, 2025)

Docket No. 24-2792

MARCUS & CINELLI, LLP,

*Plaintiff-Appellant*,

–v.–

ASPEN AMERICAN INSURANCE COMPANY,

*Defendant-Appellee.*

Before:     PARKER, ROBINSON, and PÉREZ, *Circuit Judges*.

Plaintiff-Appellant Marcus & Cinelli, LLP ("M&C"), a law firm, appeals from the judgment of the United States District Court for the Western District of New York (Sinatra, *J*.), which dismissed its claims for defense and indemnification against M&C's professional liability insurer, Defendant-Appellee Aspen American Insurance Company ("Aspen"), and

denied M&C's motion for partial summary judgment as to Aspen's duty to defend.

M&C filed a claim with Aspen seeking defense and coverage in connection with a lawsuit filed against M&C in state court by a judgment creditor of M&C's client. The judgment creditor alleged that M&C arranged for the sale of the debtor client's ring and received a portion of the proceeds of that sale in satisfaction of the debtor client's obligation to M&C for past fees, and as a retainer for future services—all at a time when the creditor had an unpaid judgment against the debtor client and had served the debtor client with a restraining notice pursuant to N.Y. C.P.L.R. § 5222(b). The state court complaint alleged that in so doing, M&C conducted and received a fraudulent conveyance, tortiously interfered with the creditor's collection of its judgment, and acted in contempt of court.

Aspen denied coverage because it concluded that the state-court complaint's allegations didn't involve the rendering of professional services and that the policy exclusion disclaiming coverage for claims based on misappropriation applied. M&C filed this federal action, and the district court dismissed M&C's claims, and denied its motion for partial summary judgment on the duty to defend, on the basis of the misappropriation exclusion.

Applying New York law, we conclude otherwise. Considering the allegations of the state-court complaint on its face, we conclude that (1) they involve M&C's provision of professional services, and (2) the complaint's allegations do not allege misappropriation by M&C, as we must understand that undefined term. The common understanding of misappropriation requires the use of another's property *without their consent*. Even if the term can be understood more broadly to encompass any dishonest application of another's property, even with that person's permission, where "the policy may be reasonably interpreted in two conflicting manners, its terms are ambiguous, and any ambiguity must be construed in favor of the insured and against the insurer." *Lend Lease (US) Constr. LMB Inc. v. Zurich Am. Ins. Co.*, 28 N.Y.3d 675, 682 (2017) (quotation marks and citation omitted). Because the state-court complaint doesn't allege that M&C sold the ring or distributed the proceeds of the sale without its client's authorization, Aspen can't defeat its duty to defend based on the misappropriation exclusion. We

express no opinion as to the applicability of other potentially available exclusions; nor do we address the scope of Aspen's ultimate liability to indemnify M&C for any losses.

Thus, we **VACATE** the district court's dismissal of M&C's claims for defense and indemnification, **REVERSE** the district court's denial of partial summary judgment for M&C on Aspen's duty to defend, and **REMAND** to the district court to enter partial summary judgment in favor of M&C on its claim that Aspen has a duty to defend.

Judge Parker dissents in a separate opinion.

―――――――――

> Timothy E. Delahunt, Delahunt Law PLCC, Buffalo, NY, *for Plaintiff-Appellant*.
>
> Dan D. Kohane, Hurwitz Fine P.C., Buffalo, NY; Jeffrey G. Steinberg, Dorf Nelson & Zauderer LLP, Rye, NY, *for Defendant-Appellee.*

―――――――――

ROBINSON, *Circuit Judge*:

Plaintiff-Appellant Marcus & Cinelli, LLP ("M&C"), a law firm, appeals from the judgment of the United States District Court for the Western District of New York (Sinatra, *J.*), which denied M&C's motion for partial summary judgment as to M&C's professional liability insurer Defendant-Appellee Aspen American Insurance Company ("Aspen")'s duty to defend and dismissed its claims for defense and indemnification against Aspen.

M&C filed a claim with Aspen seeking defense and indemnification under its professional liability policy (the "Policy") in connection with a lawsuit in state court against M&C filed by a different law firm, Patterson Belknap Webb & Tyler LLP ("Patterson"), which was a judgment creditor of M&C's client, Barbara Stewart.

In that lawsuit (the "*Patterson* action"), Patterson alleged that M&C arranged for the sale of Stewart's diamond ring and received a portion of the proceeds of that sale in satisfaction of Stewart's obligation to M&C for past fees, and as a retainer for future services—all at a time when Patterson had an unpaid judgment against Stewart and had served on her a restraining notice pursuant to N.Y. C.P.L.R. § 5222(b) (the "Restraining Notice"). Patterson's state-court complaint (the "*Patterson* complaint") alleged that in so doing, M&C conducted and received a fraudulent conveyance, tortiously interfered with Patterson's collection of its judgment, and acted in contempt of court.

Aspen denied coverage for the *Patterson* action because it concluded that the allegations in the *Patterson* complaint didn't involve the rendering of professional services and that the Policy exclusion disclaiming coverage for claims based on misappropriation applied.

M&C initiated this federal action seeking a declaratory judgment that Aspen has a duty to defend and indemnify M&C in the *Patterson* action. Aspen moved to dismiss the complaint and M&C moved for partial summary judgment regarding the duty to defend.

The district court denied M&C's motion for partial summary judgment on Aspen's duty to defend and dismissed M&C's claims on the basis of the misappropriation exclusion in the Policy. *Marcus & Cinelli, LLP v. Aspen American Insurance Company*, No. 1:23-cv-1037, 2024 WL 4291286, at *3–4 (W.D.N.Y. May 10, 2024), *R. & R. adopted*, 2024 WL 4289847, at *1 (W.D.N.Y. Sept. 25, 2024).

Applying New York law, we conclude otherwise. Considering the allegations in the *Patterson* complaint on its face, we conclude that (1) they involve M&C's provision of professional services, and (2) they do not allege "misappropriation" by M&C, as we must understand that undefined term. The common understanding of "misappropriation" requires the use of another's property without their consent. Even if the term can be understood more broadly to encompass any dishonest application of another's property, "where the policy may be reasonably interpreted in two conflicting manners, its terms are ambiguous, and any ambiguity must be construed in favor of the insured and against the insurer." *Lend Lease (US) Constr. LMB Inc. v. Zurich Am. Ins. Co.*, 28

5

N.Y.3d 675, 682 (2017).[1]  Because the *Patterson* complaint doesn't allege that M&C sold the ring, or distributed the proceeds of the sale, without Stewart's authorization, Aspen can't defeat its duty to defend based on the misappropriation exclusion.

Thus, we **VACATE** the district court's judgment of dismissal of M&C's claims for defense and indemnification, **REVERSE** the district court's denial of partial summary judgment for M&C on Aspen's duty to defend, and **REMAND** to the district court to enter partial summary judgment in favor of M&C on its claim that Aspen has a duty to defend.

## BACKGROUND

The *Patterson* complaint alleges the following.[2]  In 2012, Patterson sued its former client Stewart for unpaid legal fees.  In 2013, it secured a default judgment for more than $2 million, plus post-judgment interest.  Patterson subsequently

---

[1] In quotations from caselaw and the parties' briefing, this opinion omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

[2] In reviewing the district court's grant of a motion to dismiss, "we accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  Our review is generally "limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Id.*  Here, the documents incorporated by reference in M&C's complaint in this action include the Policy and the *Patterson* complaint against M&C.  We thus draw our factual account from all the above sources.

6

served Stewart with the Restraining Notice, which prohibited her from transferring any of her assets "except upon direction of the sheriff or pursuant to an order of the court, until the judgment or order is satisfied or vacated." App'x 22 ¶ 12 (quotation marks omitted). Patterson then issued restraining notices to various financial institutions and sought discovery from Stewart's accountants.

In February 2016, Patterson deposed Stewart. In that deposition, Stewart testified about jewelry she had been awarded in her recently completed divorce, which the divorce court had valued at $8.5 million. She claimed she did not possess the jewelry because it had been misappropriated by her former daughter-in-law. She further testified that she was not in possession of any jewelry other than the ring she wore in her deposition.

Months later, M&C attorney David P. Marcus, who has represented Stewart for years, facilitated the sale of Stewart's 24.79 carat diamond ring (the "Diamond Ring"). In particular, he corresponded with a New York City auction house about the potential sale, and provided the auction house with documents intended to demonstrate Stewart's ownership. Marcus requested that all documents and discussions with the auction house about the potential sale remain confidential.

When asked to confirm that he had reviewed the files from Stewart's divorce proceeding and was confident that Stewart had title to the Diamond Ring and

could transfer it "free and clear of any claims or encumbrances," App'x 25 ¶ 31, Marcus responded that he had "reviewed a substantial number of documents" from Stewart's divorce proceeding and was confident that Stewart had title to the ring, *id.* ¶ 32. At that time, Patterson alleged, Marcus was aware of the Restraining Notice because Patterson had emailed him a copy in 2014. But Marcus never informed the auction house about the Restraining Notice.

Faced with a choice between an auction sale that would yield up to $3.5 million or a private sale that would take place sooner but would likely yield only $2.5 million, Marcus directed the auction house to proceed with the private sale. When the auction house indicated that it was going to do a "lien search," Marcus disclosed Patterson's judgment against Stewart, stated that he did not represent Stewart in that matter, and indicated that he was aware that Patterson had asked the divorce court to award Patterson proceeds from the sale of the marital home in Bermuda to satisfy its judgment, and that Stewart's counsel was seeking to negotiate a resolution. Marcus did not disclose the Restraining Notice, and, Patterson alleged, it was not true that Patterson had limited its enforcement efforts to a single asset and in fact the Bermuda property remained unsold and was subject to claims by another alleged creditor. Marcus ultimately signed the sale

agreement on behalf of M&C, and "as agent for an undisclosed principal."  App'x 27 ¶ 41.

Marcus directed the auction house to wire the $2.375 million sale proceeds to M&C's "IOLA" account.[3]  M&C then transferred $405,863.04 to itself to pay off what it claimed was an antecedent debt owed to it by Stewart; $225,000 to a third party to satisfy a purported antecedent debt for legal services to Stewart; and the remaining proceeds—approximately $1.74 million, to three escrow accounts maintained by M&C for Stewart's benefit, and purportedly subject to Stewart's direction and control.

In December 2017, M&C entered into a retainer agreement with Stewart pursuant to which M&C transferred more than $700,000 from the escrowed proceeds to itself "to pay attorney fees for future services."  App'x 29 ¶ 56. $625,000 was transferred to a different law firm as an "advance retainer" for anticipated work as co-counsel, and $100,000 was transferred to another non-party.  App'x 29 ¶ 61.  Through the years that followed, M&C fully exhausted its retainer, and by June 17, 2022, M&C "ceased their 'working relationship with

---

[3] An "IOLA" account is an attorney account for holding monies received by an attorney in a fiduciary capacity from a client or beneficial owner.  *See generally* N.Y. Judiciary Law § 497.

[Stewart] as attorneys,' and moved to withdraw as her counsel in the matters in which they represented her." App'x 30 ¶ 65.

In 2021, Patterson discovered that the Diamond Ring had been sold because counsel to Stewart's daughter-in-law, who was engaged in litigation with Stewart relating to Stewart's jewelry collection, wrote a letter to the court in that litigation referring to documents concerning the Diamond Ring. That prompted Patterson to seek discovery from M&C pursuant to N.Y. C.P.L.R. § 5224, and ultimately to sue M&C in New York state court. On the basis of the above allegations, the *Patterson* complaint alleged that M&C violated several provisions of the New York Debtor and Creditor Law relating to fraudulent conveyances, engaged in tortious interference with collection of a money judgment, and committed civil contempt.

M&C then sought defense and indemnification from liability arising from the *Patterson* action from Aspen under the Policy. The Policy obligates Aspen to indemnify, and therefore to defend, a "claim" against M&C "by reason of an act or omission . . . in the performance of professional services." App'x 46. "Professional services" is defined as "services performed by [M&C] . . . [f]or a client in [M&C]'s capacity as a lawyer." App'x 51. The Policy also includes a provision that excludes coverage for any claim "[b]ased on or arising out of . . . the

10

misappropriation of, or failure to give an account of, any asset in [M&C]'s care[,] custody or control, including the commingling of funds." App'x 52.

Aspen denied M&C's claim on two grounds. First, it noted that the Policy provides coverage only for claims arising from acts or omissions "in the performance of professional services," and it asserted that the allegations in the *Patterson* complaint involve "self-dealing rather than the performance of professional services." App'x 79. Second, it invoked the Policy's exclusion of claims arising out of the insured's misappropriation of any asset in the insured's care, custody or control and concluded that the *Patterson* complaint alleged that M&C misappropriated the proceeds of the sale of the Diamond Ring for their own benefit. Aspen also reserved its rights as to two defenses, including one based on a Policy exclusion for claims arising out of "any dishonest, intentionally wrongful, fraudulent, criminal, or malicious act or omission by [M&C]." App'x 81.

In this action, M&C seeks a judgment declaring that Aspen has a duty to defend and indemnify M&C in the *Patterson* action. In the district court, Aspen moved to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). M&C opposed and moved for partial summary judgment on Aspen's duty to defend.

11

The district court referred the matter to a magistrate judge, who recommended that Aspen's motion to dismiss be granted and M&C's partial motion for summary judgment be denied. *Marcus & Cinelli*, 2024 WL 4291286, at *4. The magistrate judge concluded that the allegations in the *Patterson* complaint "involve the rendition of professional services by attorneys," *id.* at *2, but that each of Patterson's allegations required a determination that M&C engaged in misappropriation within the meaning of the misappropriation exclusion in the Policy, *id.* at *3. The magistrate judge reasoned that even if M&C handled the proceeds from the sale of the Diamond Ring as Stewart intended, its handling of the sale proceeds was still "unauthorized" because, in light of the Restraining Notice, Stewart could not authorize M&C to violate the Restraining Notice on her behalf. *Id.*

Over objections from M&C, the district court accepted and adopted the magistrate judge's report and recommendation and accordingly denied M&C's motion for partial summary judgment on the duty to defend and dismissed M&C's claims. *Marcus & Cinelli*, 2024 WL 4289847, at *1. In a footnote, the district court noted without explanation, and contrary to the conclusion in the report and recommendation, that Aspen's "'fee dispute' argument—that the policy provides

12

no coverage in the first instance—provides an additional reason for dismissal." *Id.* at \*1 n.3. M&C timely appealed.

## DISCUSSION

We review the grant of a motion to dismiss under Rule 12(b)(6) without deference to the district court's reasoning. *See City of Pontiac General Employees' Retirement System v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011). If, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff, the complaint fails to plausibly state a claim, then dismissal under Rule 12(b)(6) is warranted. *See id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

We exercise our discretion to review the district court's denial of Aspen's motion for partial summary judgment and do so without deference to the district court. *See Tarpon Bay Partners LLC v. Zerez Holdings Corporation*, 79 F.4th 206, 221–22 (2d Cir. 2023) (concluding that "[i]n cases where appeal is taken from final judgment, we have the discretion to review a denial of summary judgment" and we do so without deference to the district court's reasoning). Summary judgment is proper if, construing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See id.* at 222; *see also* Fed. R. Civ. P. 56(a). "Because

13

interpretation of an insurance agreement is a question of law, we review the district court's construction" of the Policy without deference to its reasoning. *High Point Design, LLC v. LM Insurance Corporation*, 911 F.3d 89, 93–94 (2d Cir. 2018).

In New York, the duty to defend is "exceedingly broad" and "if any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." *Id.* at 94–95. "[T]he insurer may deny its insured a defense only if it could be concluded as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to be obligated to indemnify the insured under any provision of the insurance policy." *Id.* at 95. An insurer "seeking to avoid its duty to defend bears a heavy burden." *City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1149 (2d Cir. 1989). It "must show that the allegations in the underlying complaint are solely and entirely within the policy's exclusions from coverage." *Id.*

Moreover, under New York law, "As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court." *Lend Lease (US) Constr. LMB Inc.*, 28 N.Y.3d at 681–82. "Of course, where the policy may be reasonably interpreted in two conflicting

14

manners, its terms are ambiguous, and any ambiguity must be construed in favor of the insured and against the insurer." *Id.* at 682.

Aspen disclaimed its duty to defend on two grounds: (1) the conduct at issue in the *Patterson* action was outside the scope of coverage because it did not involve the performance of professional services and (2) because the allegations involved M&C misappropriating the sale proceeds for its own benefit, the misappropriation exclusion in the Policy barred coverage. We address each basis in turn. *See Abreu v. Huang*, 300 A.D.2d 420, 420 (N.Y. App. Div. 2d Dep't 2002) ("An insurer's justification for denying coverage is strictly limited to those grounds stated in the notice of disclaimer.").

## I. Professional Services[4]

On appeal, as before the district court, Aspen argues that the *Patterson* action arises from a mere fee dispute between Patterson (which previously represented

---

[4] M&C argues that Aspen waived further judicial review of the magistrate judge's conclusion that the allegations in the *Patterson* complaint involve "professional services" because it didn't object to that aspect of the magistrate judge's report and recommendation. We have serious doubts as to whether preservation is required in this context. *See United States v. Street*, 917 F.3d 586 (7th Cir. 2019) (collecting cases from sister circuits supporting the proposition that "a party, who substantially prevails in a magistrate judge's recommendation, does not waive the right to appeal secondary issues resolved against him by failing to object to the recommendation"). We need not decide the question because we conclude Aspen preserved the issue. For one thing, in its

Stewart) and M&C, and thus does not implicate M&C's professional services within the scope of coverage.[5]  We disagree.

Aspen is obligated to indemnify, and therefore to defend, a "claim" against M&C "by reason of an act or omission . . . in the performance of professional services."  App'x 46.  "Professional services" is defined in relevant part as:

> [S]ervices performed by [M&C]:
>
> 1.   For a client in [M&C]'s capacity as a lawyer in good standing, mediator, arbitrator, notary public, lobbyist, or hearing officer;
>
> 2.   As an administrator, conservator, executor, guardian, trustee, receiver, or in any similar fiduciary capacity . . .

App'x 51.  We look at "the nature of the conduct" to determine whether the underlying complaint involves M&C rendering a professional service.  *Beazley*

---

opposition to M&C's objection, Aspen noted it raised additional defenses to coverage including that the *Patterson* action is a fee dispute that doesn't constitute professional services, and it pressed that argument.  Moreover, as noted above, the district court actually *reached* this argument, concluding in a footnote, contrary to the report and recommendation, that the "fee dispute" argument constituted an alternate basis for Aspen to deny coverage.  *Marcus & Cinelli*, 2024 WL 4289847, at *1 n.3.  Thus, we conclude that Aspen hasn't waived this argument.

[5] Under New York law, "an insurer waives any ground for denying coverage that is not specifically asserted in its notice of disclaimer, even if that ground would otherwise have merit." *Adames v. Nationwide Mut. Fire Ins. Co.*, 55 A.D.3d 513, 515 (N.Y. App. Div. 2d Dep't 2008).  In its disclaimer of coverage, Aspen asserted that the allegations in the *Patterson* complaint involved "self-dealing" by M&C and thus did not arise from "professional services."  App'x 79.  It did not describe the *Patterson* action as a "fee dispute."  However, because the core reasoning for Aspen's denial of coverage on this basis is that the *Patterson* complaint did not arise from the provision of "professional services" as defined in the Policy, and M&C expressly disavows any objection to this Court's authority to address the argument on appeal, we consider this alternate basis for denial.

*Insurance Company, Inc. v. ACE American Insurance Company*, 880 F.3d 64, 71 (2d Cir. 2018) (applying New York law). And if the insured "acted with the special acumen and training of professionals when they engaged in the acts" then the insured "engaged in a professional service." *Id.*

We conclude that the *Patterson* complaint's allegations that M&C engaged in professional services are sufficient to trigger Aspen's duty to defend. The *Patterson* complaint alleges that Marcus of M&C had served Stewart as an attorney for years, facilitated the sale of the Diamond Ring, provided the auction house with documents to demonstrate Stewart's ownership of the Diamond Ring, assured the auction house based on his review of legal documents that Stewart had title to the Diamond Ring, and directed the auction house on Stewart's behalf to proceed with a private sale. The *Patterson* complaint further alleged that Marcus negotiated and then signed the sale agreement on "behalf of M&C LLP and 'as agent for an undisclosed principal.'" App'x 27 ¶ 41. And it alleged that M&C placed the proceeds of the sale first in its professional IOLA account, and then, after applying some of the funds to Stewart's balance due to M&C for past fees, placed the balance of the funds in escrow accounts maintained by M&C for Stewart's benefit, and purportedly subject to Stewart's direction and control.

17

Because M&C's alleged conduct—such as offering a legal opinion as to the validity of Stewart's title to the Diamond Ring—involved "the special acumen and training" of lawyers, the *Patterson* complaint on its face alleges conduct that falls within the scope of the Policy. *Beazley Insurance Company, Inc.*, 880 F.3d at 71. Moreover, even if M&C's services in connection with the sale of the Diamond Ring and allocation of the proceeds were not undertaken in M&C's capacity "as a lawyer in good standing," they were undertaken in a "fiduciary capacity" similar to a trustee. App'x 51. For these reasons, we conclude that the *Patterson* complaint arose from M&C's provision to Stewart of covered "professional services." *Id.*

Aspen's alternate characterization of the *Patterson* complaint as arising from a "fee dispute" between two law firms does not jibe with the allegations in the *Patterson* complaint. Patterson seeks to enforce a judgment against Stewart, and concludes that M&C misappropriated funds that should have been available to Patterson to do so. The *Patterson* action is not at its core a dispute about M&C's fees, or even Patterson's entitlement to a share of those fees. The fact that Patterson is a law firm is incidental to its claims, which rest on its status as a judgment creditor who has issued a restraining notice, not as a law firm that previously represented Stewart. We find no merit to Aspen's argument. At a minimum, it is insufficient to overcome our conclusion that the claims in the *Patterson* action

18

"arguably arise from" the rendering of professional services. *High Point Design, LLC*, 911 F.3d at 95.

## II.  Misappropriation Exclusion

The "misappropriation" exclusion of the Policy provides that Aspen will not defend or pay any claim:

> Based on or arising out of the loss or destruction of or diminution in the value of any asset in [M&C's] care, custody or control, or out of the misappropriation of, or failure to give an account of, any assets in [M&C's] care[,] custody or control, including the commingling of funds[.]

App'x 52.   Whether this exclusion applies turns on the meaning of "misappropriation."  M&C urges us to interpret "misappropriation" to mean "the taking or use of client funds without the client's authorization."  Appellant's Br. at 33.   It argues that the *Patterson* complaint doesn't allege that M&C misappropriated the proceeds from the sale of the Diamond Ring because there is no allegation that it did not use the funds in the way Stewart intended.  Aspen contends that because the Restraining Notice prohibited Stewart from selling the Diamond Ring and distributing the funds, M&C's distribution of the funds in knowing violation of the Restraining Notice constituted misappropriation regardless of Stewart's authorization.

19

Applying the canons of New York law regarding the interpretation of insurance contracts, we agree with M&C—both because we conclude that M&C's interpretation is more persuasive, and because in the face of two reasonable constructions, we are bound to adopt the construction that favors the insured.

"Misappropriation" is undefined in the Policy, but it has a specific legal definition: it is "[t]he application of another's property or money dishonestly to one's own use." *Misappropriation*, Black's Law Dictionary (12th ed. 2024). The plain text of the definition requires more than just dishonest or wrongful conduct in the application of property; it requires using someone else's property without their consent.

That's consistent with how New York courts generally view misappropriation. For example, New York describes misappropriation in the context of an unfair competition tort as "the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property." *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 478 (2007). We have described it as "taking the skill, expenditures and labors of a competitor and misappropriating for the commercial advantage of one person a benefit or property right belonging to another." *Standard & Poor's Corp., Inc. v. Commodity Exchange, Inc.*, 683 F.2d 704, 710 (2d Cir. 1982).

20

Another example is the misappropriation of trade secrets. Under New York law, to succeed on a misappropriation of trade secrets claim a plaintiff must prove that "(1) it possessed a trade secret, and (2) [the] defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *E.J. Brooks Company v. Cambridge Security Seals*, 31 N.Y.3d 441, 452 (2018). In both circumstances, misappropriation requires more than just using the property dishonestly, or unethically. It requires the use of another's property without their consent to the defendant's advantage.

Here, although the *Patterson* complaint alleges that M&C acted improperly, and even fraudulently, in its sale of the Diamond Ring and allocation of the proceeds on Stewart's behalf, it does not allege that M&C used the client property within its care and control in a way that was unauthorized *by the client. See Zupko Painting, Inc. v. Utica First Insurance Company*, 232 A.D.3d 651, 654 (N.Y. App. Div. 2d Dep't 2024) (stating that the duty to defend is governed by the "four corners of the complaint rule" where insurers are not permitted "to look beyond the complaint's allegations to avoid their obligation to defend").

Rather, the *Patterson* complaint alleges primarily that M&C violated New York Debtor and Creditor Law by conducting and benefitting from one or more

fraudulent conveyances in derogation of Patterson's rights as a judgment creditor. Those claims do not on their face sound in misappropriation.

Patterson does not allege that M&C misappropriated *Patterson's* property, or that M&C sold the ring and allocated the proceeds in contravention of *Stewart's* instructions.  Patterson acknowledges M&C's view that Stewart maintained control over the sale proceeds and that the distributions were made at her direction.  At most, the *Patterson* complaint highlights that there is a factual dispute as to Stewart's control of the sale proceeds.  Because of this factual dispute, we cannot conclude that "there is no possible factual . . . basis on which" Aspen "might eventually be held to be obligated to indemnify" M&C.  *High Point Design, LLC*, 911 F.3d at 95.[6]

---

[6] The dissent suggests that because Patterson had issued the Restraining Notice, the ring and the sale proceeds "were not Stewart's or M&C's to take for itself," and that Patterson "was legally entitled" to the funds.  Dissent at 4-5.  It then reasons that M&C's sale of the ring and distribution of the proceeds, including to itself, was tantamount to taking *Patterson's* property. *Id.* at 5.  The dissent's premise overstates the effect of a restraining notice, which does not purport to transfer ownership of property to a creditor, but, rather, prohibits transfer of *a debtor's* property that a creditor may be entitled to recover.  N.Y. C.P.L.R. § 5222(b); *see also In re Wythe Berry Fee Owner LLC*, 662 B.R. 36, 46 (Bankr. S.D.N.Y. 2024) ("Restraining notices are tools to *prohibit the transfer* of funds to which a creditor is entitled for a period of time, during which the creditor may avail himself or herself of other state court remedies for recovering on a debt or judgment.").  Failure to abide by a restraining notice may constitute contempt of court, N.Y. C.P.L.R. § 5251, and a transfer in violation of a restraining order may be a fraudulent conveyance, *see, e.g.,* New York Debtor & Creditor Law § 273, but violating a restraining order does not amount to *theft*, or *misappropriation*, of the wrongfully transferred property.

22

"Insurance contracts must be interpreted according to common speech and consistent with the reasonable expectations of the average insured." *Cragg v. Allstate Indem. Corp.*, 17 N.Y.3d 118, 122 (2011).   Because the common understanding of misappropriation requires the use of another's property without their consent and the *Patterson* complaint doesn't allege that M&C distributed the funds without Stewart's authorization, we conclude that Aspen can't disclaim its duty to defend based on the misappropriation exclusion.[7]  *See Government Empls. Ins. Co. v. Kligler*, 42 N.Y.2d 863, 864 (1977) ("[W]here the provisions of the policy are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement.").

Even if we were wrong in concluding that M&C has offered the *better* interpretation of the contract, we would still conclude that the misappropriation exclusion does not vitiate Aspen's obligation under the Policy.  As noted above, under New York law, "[W]here the policy may be reasonably interpreted in two conflicting manners, its terms are ambiguous, and any ambiguity must be construed in favor of the insured and against the insurer." *Lend Lease (US) Constr.*

---

[7] The dissent argues that M&C's conduct still falls within this definition of misappropriation because it lacked "*valid* client authorization."  Dissent at 7 (emphasis added).  But this is just another way of saying that what M&C did at Stewart's behest was unlawful—not that M&C acted without Stewart's consent.  Such conduct does not fall within the common understanding of misappropriation.

*LMB Inc.*, 28 N.Y.3d at 682.  Even if Aspen's interpretation is a permissible one—in fact, even if we concluded that it was the *better* one (and we don't), we could not say that M&C's interpretation here was not a *reasonable* one.  The entire provision that encompasses the "misappropriation" exclusion relates to the "loss or destruction of or diminution in the value of any asset in [M&C's] care, custody or control," or to "misappropriation of, or failure to give an account of, any asset in [M&C's] care[,] custody or control."  App'x 52.  The exclusion as a whole addresses M&C's obligations to protect and account for property in its possession, not its obligation to deploy that property lawfully.

To the extent that misappropriation is ambiguous, we must construe it against Aspen.  *See Dean v. Tower Ins. Co. of N.Y.*, 19 N.Y.3d 704, 708 (2012) ("Ambiguities in an insurance policy are to be construed against the insurer.").  And it's Aspen who bears the burden of establishing that the misappropriation exclusion applies and is "subject to no other reasonable interpretation."  *Id.*  Aspen can't meet that burden here because, at the very least, misappropriation can reasonably be read two ways: to describe taking or using another's property without their consent, or to describe using property for unlawful purposes regardless of whether the property owner consents to that use.  We aren't permitted to extend the misappropriation exclusion "by interpretation or

implication," rather we must give "exclusions or exceptions from policy coverage . . . a strict and narrow construction." *Cragg*, 17 N.Y.3d at 122. Adopting the broader definition—as Aspen urges us to do—would run afoul of these bedrock principles of New York law.

Our holding is narrow, and our decision in this appeal does not signal that M&C will necessarily be indemnified for liability arising from the conduct alleged in the *Patterson* complaint. For one thing, the Policy *does* include an exclusion that is potentially on point. The Policy states that Aspen will not "defend or pay any claim . . . [b]ased on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal, or malicious act or omission by [M&C]." App'x 51. This is commonly referred to as the "dishonest acts exclusion." 9A Couch on Insurance, § 131:21. Aspen didn't disclaim the duty to defend based on the dishonest acts exclusion, so it is not before us in this appeal. *See* App'x 79–80; *see also Abreu*, 300 A.D.2d at 420 ("An insurer's justification for denying coverage is strictly limited to those grounds stated in the notice of disclaimer."). However, it *did* reserve its rights to disclaim coverage for this action based on the dishonest acts exclusion. *See* App'x 81.

Moreover, we address in this appeal *only* Aspen's duty to *defend* the claims in the *Patterson* action. *See Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61,

65 (1991) (stating that "an insurer may be contractually bound to defend even though it may not ultimately be bound to pay, either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy's coverage"). Aspen's duty to indemnify M&C, if M&C is found liable, will turn on the facts actually established, not simply the allegations in the *Patterson* complaint. *See Atlantic Mut. Ins. Co. v. Terk Technologies Corp.*, 309 A.D.2d 22, 28 (N.Y. App. Div. 1st Dep't 2003) ("The duty to indemnify is determined by the actual basis for the insured's liability to a third person, and does not turn on the pleadings, but rather on whether the loss, as established by the facts, is covered by the policy.").

Here, we conclude only that the allegations in the *Patterson* complaint include claims arising from M&C's provision of "professional services," as defined in the Policy, and that because the *Patterson* complaint doesn't allege that M&C distributed the sale proceeds without Stewart's authorization or in a manner that went against her wishes, Aspen can't disclaim its "exceedingly broad" duty to defend based on the misappropriation exclusion. *High Point Design, LLC*, 911 F.3d at 94; *see also id.* at 95 ("[T]he insurer may deny its insured a defense only if it could be concluded as a matter of law that there is no possible factual or legal basis on

which the insurer might eventually be held to be obligated to indemnify the insured under any provision of the insurance policy.")

## CONCLUSION

For these reasons, we **VACATE** the district court's judgment of dismissal of M&C's claims for defense and indemnification, **REVERSE** the district court's denial of partial summary judgment for M&C on Aspen's duty to defend, and **REMAND** to the district court to grant partial summary judgment in favor of M&C on its claim that Aspen has a duty to defend.

27